# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **KEVIN FOX**, individually and on behalf of a class of similarly situated persons, | : : : | Civil Action No. 2:20-cv-18131-BRM-ESK |
| Plaintiff, | : : : | |
| vs. | : : | **AMENDED COMPLAINT** |
| **STATE FARM FIRE AND CASUALTY COMPANY**, | : : : | **(Class Action)** |
| Defendant. | : : : : | |

The plaintiff, Kevin Fox, individually and on behalf a class of similarly situated persons, by way of Complaint against the defendant, hereby states as follows:

## JURISDICTION AND PARTIES

1. Plaintiff Kevin Fox is a citizen of the State of New Jersey, residing at 16 Falcon Run, Kinnelon, New Jersey 07405.

2. Defendant State Farm Fire and Casualty Company ("State Farm") is a foreign insurance company doing business in the State of New Jersey, having its principal place of business at One State Farm Plaza, Bloomington, IL 61710.

3. The amount in controversy between the parties exceeds the jurisdictional threshold amount of $75,000.

4. The United States District Court for the District of New Jersey has diversity jurisdiction over this action  pursuant to 28 U.S.C. § 1332.

## **GENERAL ALLEGATIONS**

5. This action arises out of State Farm's improper denial of Plaintiff's right to the appraisal of his insurance claim, a right that was both statutory and contractual.

6. The New Jersey statutes governing insurance include N.J.S.A. § 17:36-5.20, which requires that all fire insurance policies issued for real property located in the State of New Jersey contain certain specific provisions, in certain specific language.

7. The aforesaid statute sets forth *verbatim* the language to be included in a fire insurance policy, in a section that is colloquially referred to as "the 165 lines".

8. One part of the 165 lines specifically refers to the right of either party to the insurance contract to demand an appraisal of the claim, and reads as follows:

> Appraisal.
>
> In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand.
>
> The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located.
>
> The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and the umpire shall be paid by the parties equally.

9. The Legislature's overriding purpose in promulgating the requirement for the inclusion of the appraisal language was to ensure a quicker and less expensive forum for the resolution of disputes between an insured an his insurance company over the amount of the loss.

10. The benefits of appraisal are particularly important to insureds, who have often suffered a catastrophic financial loss and are in dire need of an expeditious resolution of the claim, and who may not have the resources to pursue the more lengthy and costly alternative of litigation.

11. The concluding language of N.J.S.A. § 17:36-5.20 states a narrowly prescribed condition under which insurers are permitted to deviate from the language of the 165 lines:

> Provided, however, that the commissioner may approve for use within the State a form of policy which does not correspond to the standard fire insurance policy as provided by this section if the coverage with respect to the peril of fire provided in such approved form is, when viewed in its entirety, substantially equivalent to or more favorable to the insured than that contained in the standard fire insurance policy established by this section.

12. By its terms, the statute gives limited authority to the Commissioner of the New Jersey Department of Banking & Insurance ("the Commissioner") to approval forms that are "substantially equivalent to or more favorable to the insured" than the 165 lines, thereby permitting an insurance company to expand the rights of the insured, but in no event to abridge them.

13. In or about March 2017, the Commissioner approved State Farm's use of a specific endorsement ("Form HW-1230") that is a part of Plaintiff's policy, and that is the subject matter of this action.

14. The language of Form HW-1230 that relates to appraisal differs from the language of the 165 lines, stating as follows:

If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only you or we may demand appraisal. A demand for appraisal must be in writing. You must comply with SECTION I - CONDITIONS, Your Duties After Loss before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

a.    Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.

b.    The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute.

The written report of agreement will set the amount of the loss of each item in dispute and will be binding upon you and us.

c.    If the two appraisers fail to agree upon the amount of the loss within 30 days, unless the period of time is extended by mutual agreement, they will select a competent, disinterested umpire and will submit their differences to the umpire. If the appraisers are unable to agree upon an umpire within 15 days:

(1)    you or we may make a written application for a judge of a court of record in the same state and county (or city if the city is not within a county) where the residence premises is located to select an umpire;

(2)    the party requesting the selection described in item c.(1) must provide the other party:

(a)    written notice of the intent to file, identifying the specific location and identity of the court at least 10 days prior to submission of the written application; and

-4-

(b)     a copy of the written applica-
tion; and

(3)     a written report of agreement, as required in item b.,
signed by any two (appraisers or appraiser and umpire)
will set the amount of the loss of each item in dispute
and will be binding upon you and us. In all instances
the written report of agreement will be itemized and
state separately the actual cash value, replacement
cost, and if applicable, the market value of each item
in dispute.

d.     To qualify as an appraiser or umpire for a loss to property
described in COVERAGE A - DWELLING, a person must be one
of the following and be licensed or certified as required by the
applicable jurisdiction:

(1)     an engineer or architect with experience and training
in building construction, repair, estimating, or
investigation of the type of property damage in
dispute;

(2)     an adjuster or public adjuster with experience
and training in estimating the type of property
damage in dispute; or

(3)     a contractor with experience and training in the
construction, repair, and estimating of the type of
property damage in dispute.

e.     A person may not serve as an appraiser or umpire if that
person, any employee of that person, that person's employer,
or any employee of their employer:

(1)     has performed services for either party with respect to
the claim at issue in the appraisal; or

(2)     has a financial interest in the outcome of the claim at
issue in the appraisal.

f.     Each party will be responsible for the compensation of their
selected appraiser. Reasonable expenses of the appraisal and
the reasonable compensation of the umpire will be paid
equally by you and us.

g.     You and we do not waive any rights by demanding or
submitting to an appraisal, and retain all contractual rights to
determine if coverage applies to each item in dispute.

h.     Appraisal is only available to determine the amount of the loss
of each item in dispute. The appraisers and the umpire have
no authority to decide:

(1)     any other questions of fact;
(2)     questions of law;
(3)     questions of coverage;
(4)     other contractual issues; or
(5)     to conduct appraisal on a class-wide basis.

i.     Appraisal is a non-judicial proceeding and does not provide for
or require arbitration. Neither party will be awarded attorney
fees. The appraisal award may not be entered as a judgment
in a court.

j.     A party may not demand appraisal after that party brings suit
or action against the other party relating to the amount of loss.

15. The aforesaid appraisal provision includes modifications and conditions for exercising

the right of appraisal that do not appear in or comply with N.J.S.A. § 17:36-5.20.

16. The said modifications have the effect of making it more difficult for an insured to invoke

the remedy of appraisal, thereby depriving him of the rights contemplated by the statute.

17. Form HW-2310 represents a deliberate attempt by State Farm to limit an insured's access

to the appraisal remedy, thereby putting greater pressure on an insured to accept a lesser amount to

resolve a claim than the insured might reasonably be anticipated to receive through appraisal.

18. State Farm's application of Form HW-2310 has in fact made it more difficult for insureds

to invoke the remedy of appraisal.

19. At all times relevant to this Complaint, Plaintiff was the owner of real property located

at 16 Falcon Run, Kinnelon, New Jersey 07405 ("the Property").

20. At all times relevant to this Complaint, the Property was insured under a property and casualty insurance policy issued by State Farm.

21. On or about April 13, 2020, the Property suffered damage from an occurrence that constituted a covered event under the State Farm policy.

22. Plaintiff duly reported the occurrence to State Farm, which opened a claims file.

23. Plaintiff was unsatisfied with State Farm's handling of the claim, and accordingly hired North Jersey Public Adjusters Inc. ("North Jersey") to adjust the claim on his behalf.

24. On May 6, 2020, North Jersey emailed a construction cost estimate to State Farm with a replacement cost of $145,816.88. (Exhibit A)

25. On July 8, 2020, State Farm wrote to Plaintiff that his estimate included items "that go well beyond the scope of repairs pertaining to this loss and also that are not part of the claim or not related to the claim and not compensable according to your State Farm policy". (Exhibit B)

26. However, the letter made no attempt to support that claim or to specify what items were considered beyond the scope, thereby depriving Plaintiff of the ability to dispute the objections.

27. The State Farm letter went on to specifically inform the plaintiff of his right to seek appraisal, quoting the policy appraisal section at length.

28. State Farm also sent with the letter an enclosure, which was an estimate done by its own contractor, Resto Corp., showing a replacement cost for the building of $28,536.76. (Exhibit C)

29. The Resto estimate was prepared using a format and methodology that significantly differed from the North Jersey estimate, such that it was, as a practical matter, virtually impossible for Plaintiff or his public adjuster to determine how and to what extent State Farm was claiming a difference in the "scope" of the necessary repairs.

30. On July 17, 2020, North Jersey sent an email to State Farm attaching a duly executed Agreement for Submission to Appraisers. (Exhibit D)

31. On July 20, 2020, State Farm sent North Jersey a letter refusing to submit to an appraisal of the claim. (Exhibit E)

31. The letter explained State Farm's refusal as follows:

> At this time, State Farm is not in receipt of an estimate from our policyholder's contractor of choice, nor do we have any itemization identifying each item being disputed. For this reason, we have to decline your Demand for Appraisal at this time.

32. N.J.S.A. § 17:36-5.20 does not embody any requirement that an insured submit an estimate from his "contractor of choice" as a condition precedent to invoking the right of appraisal.

33. Plaintiff had submitted an estimate prepared by North Jersey, which has prepared thousands of such estimates in the past, and that estimate had established that the parties did not agree as to the value of the loss, thereby entitling Plaintiff to demand an appraisal.

34. N.J.S.A. § 17:36-5.20 does not embody any requirement that an insured submit an "itemization identifying each item being disputed".

35. The submission of such an itemization would in many cases, as in the present case, be virtually impossible for an insured, given that the respective estimators relied upon by the parties showed the work to be performed in different formats, which could not be reconciled or compared on an exact item-by-item basis.

36. Only in very rare instances does is an estimate submitted by an insured prepared in the same manner as the estimate of the insurance company, such that the detailed "itemization" demanded by State Farm could be provided.

37. Furthermore, State Farm was in a position at least equal to that of the plaintiff to make the determination, and had no legal support for putting that burden on the insured as a precondition for appraisal.

38. Nevertheless, on July 21, 2020 North Jersey sent State Farm estimates from Plaintiff's contractor, American Eagle Ext LLC, totaling approximately $88,000. (Exhibit F)

39. The American Eagle invoices represented the repair of the property using construction methods that were in some respects inferior to those to which the plaintiff was entitled, in an effort to compromise plaintiff's demand so as resolve the dispute as to the amount of the loss.

40. On July 29, 2020, North Jersey sent an email that constituted a good faith effort to comply with State Farm's demand for a detailed "itemization", despite the fact that State Farm had no basis for making such a demand, and despite the fact that such demand placed unauthorized preconditions on Plaintiff's right to appraisal. (Exhibit G)

41. Despite the foregoing efforts on the part of the plaintiff, on August 7, 2020, State Farm again refused to submit to appraisal, asserting that it "does not apply to disputes as to the extent of damage, the scope of work required, the cause of damage, or other coverage questions". (Exhibit H)

42. The letter included the following specific issues:

> Based on the documentation you have submitted, it appears you and State Farm still are not in agreement on the extent of covered damage and scope of work required to repair that damage. By way of example (and without limitation), it appears that:
>
> • Your and your contractor's estimates include replacement of the entire roof, whereas State Farm has provided coverage for replacement of the damaged slope based on the estimate from Resto Corp. (As we previously advised you, State Farm has determined that the Resto Corp estimate accurately reflects the repairs needed to address the covered damages and has paid the insureds based on that estimate.)

- Your and your contractor's estimates include removal and replacement of all of the exterior cedar shake siding (including areas that were not damaged in the loss), whereas State Farm has provided coverage for replacement of the damaged areas.

- Your estimate includes repair of floors in rooms that were not damaged and which are separated from other rooms by thresholds (as noted by Resto Corp and which we have previously explained to you on July 8, 2020).

- Your and your contractor's estimates include repair of kitchen cabinets that were not damaged in the loss.

Appraisal is not appropriate under these circumstances. Accordingly, State Farm rejects your current demand for appraisal.

Notwithstanding the above, at this point in time, State Farm would agree to go to appraisal based on the scope of the damage identified in the building estimate prepared by Resto Corp (and adopted by State Farm). Any such appraisal award would be subject to the terms, conditions, exclusions, and limits of the policy. Please advise if you and the insured want to proceed with such an appraisal.

42. By way of illustration of the allegations made heretofore, State Farm refused to appraise because Plaintiffs' contractor proposed to fix the damaged roof by replacing all of it, whereas State Farm's contractor would fix the roof by replacing only a certain part of it.

43. Plaintiff and State Farm were in agreement that Plaintiff's roof had been damaged.

44. Plaintiff and State Farm were in agreement that Plaintiff's roof was in need of repair.

45. Plaintiff and State Farm were in agreement that the occurrence resulting in the damaged roof constituted a covered event.

46. Plaintiff and State Farm were in agreement that the repair of the roof was a covered item under the policy.

47. Plaintiff and State Farm were in disagreement over what method to use to repair the roof, resulting in a failure to agree on the cost of that job.

48. Failure to agree on the best method to repair a loss is a common occurrence in the adjustment of insurance claims, commonly results in a failure to agree on the value of the loss, and has commonly been the subject of appraisal.

49. State Farm mischaracterized this dispute as relating to "the extent of covered damage and scope of work required to repair that damage", when it was actually a failure to agree on the value of the loss, thereby making it virtually impossible for Plaintiff to obtain appraisal of the loss.

50. By way of further illustration, State Farm refused to appraise because Plaintiffs' contractor would fix the damage to the shingles on Plaintiff's house by replacing all of the shingles, whereas State Farm's contractor would fix the damage by replacing only some of them.

51. Plaintiff and State Farm were in agreement that shingles on Plaintiff's house had been damaged.

52. Plaintiff and State Farm were in agreement that the shingles were in need of repair.

53. Plaintiff and State Farm were in agreement that the occurrence resulting in the damage to the shingles constituted a covered event.

54. Plaintiff and State Farm were in agreement the repair of the shingles was a covered item under the policy.

55. Plaintiff and State Farm were in disagreement over whether the proper method of repair of the shingles issue required the replacement of all of only some of the shingles.

56. As set forth heretofore, failure to agree on the best method to repair a loss is a common occurrence in the adjustment of insurance claims, commonly results in a failure to agree on the value of the loss, and has commonly been the subject of appraisal.

-11-

57. State Farm mischaracterized this dispute as relating to "the extent of covered damage and scope of work required to repair that damage", when it was actually a failure to agree on the value of the loss, thereby making it virtually impossible for Plaintiff to obtain appraisal of the loss.

58. Notwithstanding te approval of Form HW-22130 by the Commissioner, as a result of its incorporation into State Farm's policy, and as a result of the manner in which it has been applied by State Farm, the defendant has deviated from the statutory appraisal requirement.

59. Upon information and belief, State Farm has engaged in the aforesaid conduct with such frequency as to indicate a general business practice.

60. Through the employment of such general business practice, State Farm has violated N.J.S.A. §17:29-4, the New Jersey deceptive practices, including, but not limited to, Paragraph 9(f) thereof, which requires an insured to act in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

## **COUNT ONE**

### **Declaratory Judgment/Reformation**

61. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

62. The insurance policy issued to Plaintiff by State Farm constitutes a contract.

63. At the time of the issuance of the policy, Plaintiff believed and assumed that all of the provisions therein were in compliance with New Jersey law.

64. At the time of the issuance of the policy, State Farm, in reliance on the approval of the Commissioner of the New Jersey Department of Banking and Insurance, believed that all of the provisions therein were in compliance with New Jersey law.

65. Notwithstanding the approval of the Commissioner, the appraisal provisions of the policy, which are set forth above in ¶ 14, were not in compliance with N.J.S.A. § 17:36-5.20.

66. The appraisal provisions of the policy did not provide the insured with substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20, and the Commissioner therefore exceeded his authority in approving the form.

67. By way of example, Form HW-22130 states: "You must comply with SECTION I - CONDITIONS, Your Duties After Loss before making a demand for appraisal."

68. The aforesaid provision imposes a precondition on the insured's right to invoke appraisal, even if the parties have disagreed as to the amount of the loss, that is not found in N.J.S.A. §17:36-5.20, thereby depriving the insured of substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20.

69. By way of further example, Form HW-22130 states: "At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed."

70. The aforesaid provision imposes a precondition on the insured's right to invoke appraisal, even if the parties have disagreed as to the amount of the loss, that is not found in N.J.S.A. §17:36-5.20, thereby depriving the insured of substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20, as further set forth above.

71. The belief of the parties that all of the provisions of the policy were in compliance with New Jersey law constituted a mutual mistake of fact.

72. Consequently, Plaintiff is entitled to the reformation of the policy's appraisal provision, such that the contract will comply with N.J.S.A. §17:36-5.20.

**WHEREFORE**, Plaintiff demands judgment against State Farm for the following relief:

(1) A declaratory judgment that the appraisal provision contained in Form HW-22130 of the State Farm policy does not provide substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20, and/or that the Commissioner of the New Jersey Department of Banking and Insurance exceeded his statutory authority in approving the appraisal provision contained in Form HW-22130;

(2) Reformation of the contract of insurance by the deletion of the appraisal provision contained in Form HW-22130 and the substitution of the statutory language contained in the 165 lines, or in such other manner as the Court deems necessary and appropriate to bring Form HW-22130 into compliance with the statute;

(3) An Order compelling Defendant to proceed with an appraisal of Plaintiff's claim in a manner consistent with the terms of the policy as they shall be deemed to exist following the reformation of the contract;

(4) Costs of suit;

(5) Such further relief as the Court deems just and proper.

## COUNT TWO

### Breach of Contract

73. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

74. The insurance policy issued to Plaintiff by State Farm constituted a contract.

75. The plaintiff complied with all of his contractual obligations, both as originally written and, to the extent that the relief sought in Count One above is granted, as reformed by the Court.

76. State Farm breached the terms of the contract of insurance, both as originally written and, to the extent that the relief sought in Count One above as granted, as reformed by the Court.

77. By way of example, State Farm demanded that Plaintiff provide an itemization of disputed issues in a manner that was neither reasonable nor possible under the circumstances and rejected all reasonable efforts by Plaintiff to do so, all as set forth in detail above, and in particular in ¶¶ 30-41, which are incorporated herein by reference.

78. If and to the extent that the relief sought in Count One above is granted, the requirement of an itemization of the issues in dispute from Plaintiff as a precondition to the right of appraisal violated the express terms of the policy as reformed by the Court, inasmuch as the text of N.J.S.A. §17:36-5.20, as set forth above in ¶ 8, does not contain such a precondition.

79. Plaintiff engaged in a reasonable good faith attempt to itemize the items in dispute, and State Farm's continued refusal to appraise unless Plaintiff submitted an itemization that was neither reasonable nor possible under the circumstances was in breach of the provisions of the policy, all as set forth in detail above, and in particular in ¶¶ 30-41, which are incorporated herein by reference.

80. By way of further example, State Farm mischaracterized disagreements over the cost of repairs as disputes over "scope", thereby creating an excuse not to submit to appraisal notwithstanding the provisions of the contract,  all as set forth in detail above, and in particular in ¶¶ 41-57, which are incorporated herein by reference.

81. By virtue of all of the foregoing, Plaintiff has been denied his right to appraisal, and has otherwise been damaged

**WHEREFORE**, Plaintiff demands judgment against State Farm for the following relief:

(1) A declaratory judgment that State Farm breached the policy of insurance by refusing to submit to an appraisal of Plaintiff's claim;

(2) Compensatory and consequential damages arising out of State Farm's failure to submit to an appraisal of Plaintiff's claim;

-15-

(3)  An Order compelling Defendant to proceed with an appraisal of Plaintiff's claim;

(4)  Costs of suit;

(5)  Such further relief as the Court deems just and proper.

## COUNT THREE

### Breach of Covenants

82. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

83. The insurance policy issued to Plaintiff by State Farm constituted a contract.

84. By operation of New Jersey law, the insurance policy implicitly incorporates the covenants of good faith and fair dealing.

85. If and to the extent that State Farm is found not to have violated the express terms of the insurance contract, it has nevertheless acted tortiously and in bad faith, and has breached the covenants of good faith and fair dealing, all as set forth above in greater detail.

86. By way of example, State Farm demanded that Plaintiff provide an itemization of disputed issues in a manner that was neither reasonable nor possible under the circumstances and rejected all reasonable efforts by Plaintiff to do so, all as set forth in detail above, and in particular in ¶¶ 30-41, which are incorporated herein by reference.

87. If and to the extent that the demand for an itemization did not violate the express policy terms, State Farm nevertheless breached the covenants of good faith and fair dealing by demanding it in a form that was neither reasonable nor possible under the circumstances, and by rejecting Plaintiff's good faith efforts to comply.

88. By way of further example, if and to the extent that it is found that State Farm was entitled to refuse appraisal of issues of "scope", such that its refusal was not inconsistent with the express terms of the policy, State Farm nevertheless breached the covenants of good faith and fair dealing by mischarecterizing disputes over cost as disputes over scope, all as set forth in detail above, and in particular in ¶¶ 41-57, which are incorporated herein by reference.

89. By virtue of all of the foregoing, Plaintiff has been denied his right to appraisal, and has otherwise been damaged.

**WHEREFORE**, Plaintiff demands judgment against State Farm for the following relief:

(1) A declaratory judgment that State Farm breached the covenants of good faith and fair dealing by refusing to submit to an appraisal of Plaintiff's claim;

(2) Compensatory and consequential damages arising out of State Farm's failure to submit to an appraisal of Plaintiff's claim;

(3) An Order compelling Defendant to proceed with an appraisal of Plaintiff's claim;

(4) Punitive damages;

(5) Attorney's fees;

(6) Costs of suit;

(7) Such further relief as the Court deems just and proper.

## COUNT FOUR

### Consumer Fraud

90. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

91. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (the CFA"), prohibits the use of any unconscionable commercial practice, deception, fraud, false pretense, false promise, or

misrepresentation in connection with the sale of merchandise or the subsequent performance thereof, whether or not any person has been misled, deceived or damaged thereby.

92. The CFA applies both to the sale of insurance policies and the subsequent performance of the seller's obligations thereunder, and fraudulent conduct in the subsequent performance by an insurer of its obligations under the policy constitutes a violation of the CFA.

93. State Farm engaged in conduct during the course of the adjustment of Plaintiff's claim, and more specifically in its refusal to submit to appraisal, that included and constituted an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation, all as set forth in detail heretofore.

94. By way of example, State Farm's demand that Plaintiff provide an itemization of disputed issues in a manner that was neither reasonable nor possible under the circumstances, and its rejection of reasonable efforts by Plaintiff to comply, all as set forth in detail above and in particular in ¶¶ 30-41 which are incorporated herein by reference, constituted an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation in violation of the CFA.

95. By way of further example, State Farm's mischaracterization of disagreements over the cost of repairs as disputes over "scope" for the purpose of defeating Plaintiff's statutory and contractual right to appraisal, all as set forth in detail above and in particular in ¶¶ 41-57, which are incorporated herein by reference, constituted an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation in violation of the CFA.

96. By virtue of all of the foregoing, Plaintiff has been denied his right to appraisal, and has otherwise been damaged.

-18-

**WHEREFORE**, Plaintiff demands judgment against State Farm for the following relief:

(1) A declaratory judgment that State Farm breached the CFA by refusing to submit to an appraisal of Plaintiff's claim;

(2) Compensatory and consequential damages arising out of State Farm's failure to submit to an appraisal of Plaintiff's claim;

(3) An Order compelling Defendant to proceed with an appraisal of Plaintiff's claim;

(4) Treble damages;

(5) Attorney's fees;

(6) Costs of suit;

(7) Such further relief as the Court deems just and proper.

## CLASS ACTION GENERAL ALLEGATIONS

97. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

98. This class action is brought on behalf of a class of persons and entities to be described herein as "Class A", and such sub-classes thereof as shall be defined herein.

99. Class A is defined as all State Farm fire insurance policyholders insured for property located in New Jersey, whose policy includes endorsement HW-2130.

100. Each sub-class to be defined herein is composed of members of Class A, with one or more additional elements common to each member of the sub-class.

101. Upon information and belief, at the time of the filing of this Complaint and at all other times relevant thereto, there have been thousands of insureds meeting the definition of Class A.

102. Consequently, Class A is so numerous that the joinder of each individual members thereof is impractical, within the meaning of R. 4:32-1(a)(1).

103. There are issues of law and fact, including, but not limited to the application of N.J.S.A. 17:36-5.20 and the appraisal policy provision in the insured's policy, that are common to all members of the class within the meaning of R. 4:32-1(a)(2).

104. The claims of the individual plaintiff, Kevin Fox, are typical of the claims or defenses of Class A, within the meaning of R. 4:32-1(a)(3).

105. The individual plaintiff, Kevin Fox, as representative of Class A, will fairly and adequately protect the interests of the class, within the meaning of R. 4:32-1(a)(4).

106. The prosecution of separate actions by individual members of Class A would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for State Farm with regard to it appraisal policy provision, within the meaning of R. 4:32-1(b)(1)(A).

107. The prosecution of separate actions by individual members of Class A would create a risk of adjudications that as a practical matter would, with respect to other individual members of the class, substantially impair or impede their ability to protect their interests, by creating unfavorable precedent, all within the meaning of R. 4:32-1(b)(1)(B).

108. State Farm has acted on grounds generally applicable to Class A, within the meaning of R. 4:32-1(b)(2), such that final injunctive and declaratory relief with respect to the class as a whole is appropriate.

109. The questions of law a fact common to Class A predominate over any such questions affecting only individual class members, within the meaning of R. 4:32-1(b)(3).

110. Based on all of the foregoing, a class action is superior to other available methods for the fair and efficient adjudication of the controversy, within the meaning of R. 4:32-1(b)(3).

## COUNT FIVE

### Declaratory Judgment/Reformation - Class A

111. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

112. The policy issued to each member of Class A by State Farm constituted a contract.

113. At the time of the issuance of the policy, each member of Class A believed and assumed that all of the provisions therein were in compliance with New Jersey law.

114. At the time of the issuance of the policy, State Farm, in reliance on the approval of the Commissioner, believed that all of the provisions therein were in compliance with New Jersey law.

115. Notwithstanding the approval of the Commissioner, the appraisal provisions of the policy, which are set forth above in ¶ 14, were not in compliance with N.J.S.A. § 17:36-5.20.

116. The appraisal provisions of the policy did not provide the insured with substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20, and the Commissioner therefore exceeded his authority in approving the form.

117. By way of example, Form HW-22130 states: "You must comply with SECTION I - CONDITIONS, Your Duties After Loss before making a demand for appraisal."

118. The aforesaid provision imposes a precondition on the insured's right to invoke appraisal, even if the parties have disagreed as to the amount of the loss, that is not found in N.J.S.A. §17:36-5.20, thereby depriving the insured of substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20.

119. By way of further example, Form HW-22130 states: "At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized

-21-

documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed."

110. The aforesaid provision imposes a precondition on the insured's right to invoke appraisal, even if the parties have disagreed as to the amount of the loss, that is not found in N.J.S.A. §17:36-5.20, thereby depriving the insured of substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20, as further set forth above.

111. The belief of the parties that all of the provisions of the policy were in compliance with New Jersey law constituted a mutual mistake of fact.

112. Consequently, each member of Class A is entitled to the reformation of the policy's appraisal provision, such that the contract will comply with N.J.S.A. §17:36-5.20.

**WHEREFORE**, Plaintiff, as representative of the members of Class A, demands judgment against State Farm for the following relief:

(1) A declaratory judgment that the appraisal provision contained in Form HW-22130 of the State Farm policy does not provide substantially equivalent or more favorable terms than those contained in N.J.S.A. §17:36-5.20, and/or that the Commissioner of the New Jersey Department of Banking and Insurance exceeded his statutory authority in approving the appraisal provision contained in Form HW-22130;

(2) Reformation of the contract of insurance by the deletion of the appraisal provision contained in Form HW-22130 and the substitution of the statutory language contained in the 165 lines, or in such other manner as the Court deems necessary and appropriate to bring Form HW-22130 into compliance with the statute;

(3) Attorneys fees;

(4) Costs of suit;

(5) Such further relief as the Court deems just and proper.

## COUNT SIX

### Breach of Contract - Subclass A-1

113. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

114. Subclass A-1 is defined as all members of Class A who settled their respective insurance claims against State Farm without making a demand for appraisal.

115. At the time of the issuance of the policy and at all relevant times thereafter, each member of Subclass A-1 believed and assumed that all of the provisions therein were in compliance with New Jersey law.

116. Upon information and belief, each member of Subclass A-1 was discouraged from considering and/or exercising the right to invoke appraisal because of the complexities of the appraisal provisions of Form HW-22130, which imposed obligations on the insured not contained in N.J.S.A. § 17:36-5.20.

117. The aforesaid provisions included, but were not limited to, the requirement that "At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed."

118. Upon information and belief, each member of Subclass A-1 settled their respective claim for less than could reasonably have been expected to be awarded through the appraisal process, whereby each has been damaged.

**WHEREFORE**, Plaintiff, as representative of the members of Subclass A-1, demands judgment against State Farm for the following relief:

(1)  All relief sought in Count Five as to Class A generally;

(2)  An Order affording each member of Class A-2 the right to have his claim reopened and submitted to appraisal to determine if further payment should be made;

(3)  Such further relief as the Court deems just and proper.

## **COUNT SEVEN**

### **Breach of Contract - Subclass A-2**

119. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

120. Subclass A-2 is defined as all members of Class A who demanded appraisal, and as to whom State Farm failed, declined, or refused to go to appraisal on the basis of the language of the State Farm policy appraisal provision.

120. The insurance policy issued to each member of Subclass A-2 by State Farm constituted a contract.

121. Upon information and belief, in each instance State Farm's refusal to appraise the claim was in violation of the provisions of the contract of insurance, whereby each member of Subclass A-2 has been damaged.

**WHEREFORE**, Plaintiff, as representative of the members of Subclass A-2, demands judgment against State Farm for the following relief:

(1)  A declaratory judgment that State Farm breached the policy of insurance by refusing to submit to an appraisal of Plaintiff's claim;

(2)  Compensatory and consequential damages arising out of State Farm's failure to submit to an appraisal of the claim;

(3)  An Order affording each member of Class A-2 the right to have his claim reopened and submitted to appraisal to determine if further payment should be made;

(4)  Attorneys fees;

(5)  Costs of suit;

(6)  Such further relief as the Court deems just and proper.

## COUNT EIGHT

### Breach of Covenants - Subclass A-2

122. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

123. The insurance policy issued to each member of Subclass A-2 by State Farm constituted a contract.

124. By operation of New Jersey law, each such insurance policy implicitly incorporated the covenants of good faith and fair dealing.

125. If and to the extent that State Farm is found not to have violated the express terms of the insurance contract as to any member of Subclass A-2, it has nevertheless acted tortiously and in bad faith with respect to such member, and has breached the covenants of good faith and fair dealing, whereby each member of Subclass A-2 has been damaged.

**WHEREFORE**, Plaintiff, as representative of Subclass A-2,  demands judgment against State Farm for the following relief:

(1)  A declaratory judgment that State Farm breached the covenants of good faith and fair dealing by refusing to submit to appraisal;

(2)  Compensatory and consequential damages arising out of State Farm's failure to submit to appraisal;

(3)  An Order affording each member of Class A-2 the right to have his claim reopened and submitted to appraisal to determine if further payment should be made;

(4)   An Order compelling Defendant to proceed with an appraisal of Plaintiff's claim;

(5)   Punitive damages;

(6)   Attorney's fees;

(7)   Costs of suit;

(8)   Such further relief as the Court deems just and proper.

## COUNT NINE

### Consumer Fraud - Subclass A-2

126. The allegations of all preceding paragraphs of this Complaint are hereby realleged and incorporated as though fully set forth herein.

130. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*. (the CFA"), prohibits the use of any unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation in connection with the sale of merchandise or the subsequent performance thereof, whether or not any person has been misled, deceived or damaged thereby.

131. The CFA applies both to the sale of insurance policies and the subsequent performance of the seller's obligations thereunder, and fraudulent conduct in the subsequent performance by an insurer of its obligations under the policy constitutes a violation of the CFA.

132. State Farm engaged in conduct during the course of the adjustment of the claims of each member of Subclass A-2, and more specifically in its refusal to submit to appraisal on such claims, that included and constituted an unconscionable commercial practice, deception, fraud, false pretense, false promise, and  misrepresentation, all as set forth in detail heretofore, whereby each member of Subclass A-2 has been damaged.

**WHEREFORE**, Plaintiff demands judgment against State Farm for the following relief:

(1) A declaratory judgment that State Farm breached the CFA by refusing to submit to an appraisal of the claims;

(2) Compensatory and consequential damages arising out of State Farm's failure to submit to an appraisal of the claims;

(3) An Order affording each member of Class A-2 the right to have his claims reopened and submitted to appraisal to determine if further payment should be made;

(4) Treble damages;

(5) Attorney's fees;

(6) Costs of suit;

(7) Such further relief as the Court deems just and proper.

/s/ Jeffrey A. Bronster
JEFFREY A. BRONSTER, ESQ.
17 Wendell Place
Fairview, New Jersey 07022
(201) 602-8217
Attorney ID#  JB/2620
Attorney for the Plaintiff

Dated:  March 5, 2021
        Fairview, NJ