<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVIN FOX, individually and on behalf of a class of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant. | Case No. 2:20-cv-18131 (BRM) (ESK) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant State Farm Fire and Casualty's ("State Farm") Motion to Dismiss Plaintiff Kevin Fox's ("Plaintiff") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 33.) Plaintiff opposed the Motion (ECF No. 34), and State Farm replied (ECF No. 35). Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, State Farm's Motion to Dismiss is **GRANTED**.

I. **BACKGROUND**

A. **Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*

*Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action concerns a dispute over insurance coverage. At all times relevant to the Amended Complaint, Plaintiff was the owner of real property located at 16 Falcon Run, Kinnelon, New Jersey 07405 (the "Property"). (ECF No. 31 ¶ 19.) The Property was insured under a policy issued by State Farm (the "Policy"). (*Id.* ¶ 20.) On or about April 13, 2020, the Property suffered damage from a covered event under the Policy. (*Id.* ¶ 21.) Plaintiff reported the occurrence to State Farm, which opened a claim file, but Plaintiff was not satisfied with State Farm's handling of the claim and hired North Jersey Public Adjusters Inc. ("North Jersey") to adjust the claim on Plaintiff's behalf. (*Id.* ¶¶ 22–23.) On May 6, 2020, North Jersey emailed a construction cost estimate to State Farm with a replacement cost of $145,816.88. (*Id.* ¶ 24.) On July 8, 2020, State Farm responded to the estimate and stated Plaintiff's estimate from North Jersey included items that exceeded the scope of repairs pertaining to the loss, but did not specify which items were considered beyond the scope of repairs. (*Id.* ¶¶ 25–26.) In its response, State Farm included its own estimate, which indicated a replacement cost for the Property of $28,536.76. (*Id.* ¶ 28.) Plaintiff claims State Farm's estimate used "a format and methodology that significantly differed from the North Jersey estimate, such that it was, as a practical matter, virtually impossible for Plaintiff or his adjuster to determine how and to what extent State Farm was claiming a difference in the 'scope' of the necessary repairs." (*Id.* ¶ 29.) On July 17, 2020, North Jersey sent State Farm an email with an Agreement for Submission to Appraisers attached. (*Id.* ¶ 30.) On July 20, 2020, State Farm sent North Jersey a letter refusing to submit to an appraisal of the claim. (*Id.* ¶ 31.) On July 21, 2020, North Jersey sent State Farm estimates from Plaintiff's contractor, American Eagle Ext. LLC, totaling about $88,000. (*Id.* ¶ 38.) The American Eagle invoices represented the

Property's repair using construction methods inferior to what Plaintiff was entitled "in an effort to compromise [Plaintiff's] demand" and resolve the dispute over the amount of loss. (*Id.* ¶ 39.)

On July 29, 2020, North Jersey sent State Farm an email attempting to comply with State Farm's demand for a detailed itemization, even though, according to Plaintiff, State Farm had no basis for making such a demand which placed unauthorized preconditions on Plaintiff's right to appraisal. (*Id.* ¶ 40.) On August 7, 2020, State Farm again refused to submit to appraisal because appraisal "does not apply to disputes as to the extent of damage, the scope of work required, the cause of damage, or other coverage questions." (*Id.* ¶ 41 (citing Ex. H).) That is, State Farm refused to comply with Plaintiff's demand for appraisal because Plaintiff's contractor proposed to fix the Property's damaged roof by replacing all of it, whereas State Farm's contractor would fix the roof by only replacing the damaged portions. (*Id.* ¶ 42.) Plaintiff and State Farm agreed the Property's roof had been damaged, was in need of repair, the occurrence resulting in the damaged roof was a covered event, and the repair of the roof was a covered item under the Policy. (*Id.* ¶¶ 43–46.) Plaintiff and State Farm disagreed over what method to use to repair the roof, which resulted in a failure to agree on the cost of the job. (*Id.* ¶ 47.) Plaintiff further asserts State Farm mischaracterized the dispute as relating to the extent of coverage and scope of work required to repair the damage to the Property and contends the actual dispute stems from a failure to agree on the value of the loss. (*Id.* ¶ 49.) As a result, Plaintiff alleges State Farm "has deviated from the statutory appraisal requirement." (*Id.* ¶ 58.) Upon information and belief, Plaintiff alleges State Farm has engaged in the above conduct "with such frequency as to indicate a general business practice," which violates N.J. Stat. Ann. § 17:29-4. (*Id.* ¶¶ 59–60.)

### B.      Procedural History

On November 3, 2020, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Morris County. (ECF No. 1 ¶ 1.) State Farm received notice of Plaintiff's Complaint on November 4, 2020 and removed the action to this Court on December 4, 2020. (*See id.*) On December 28, 2020, State Farm filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) On February 11, 2021, the Court administratively terminated State Farm's initial Motion to Dismiss and directed Plaintiff to address the deficiencies noted in State Farm's Motion and Reply in an amended complaint. (ECF No. 26.) On March 5, 2021, Plaintiff filed the Amended Complaint currently before the Court alleging Declaratory Judgment/Reformation (Count One), Breach of Contract (Count Two), Breach of Covenants (Count Three), and Consumer Fraud (Count Four) against State Farm. (ECF No. 31.) Plaintiff's Amended Complaint also asserts class action allegations for Declaratory Judgment/Reformation on behalf of Class A[1] (Count Five), Breach of Contract on behalf of Subclass A-1[2] (Count Six), Breach of Contract on behalf of Subclass A-2 (Count Seven), Breach of Covenants on behalf of Subclass A-2 (Count Eight), and Consumer Fraud on behalf of Subclass A-2 (Count Nine). (*Id.*) On April 2, 2021, State Farm filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 33.) On April 5, 2021, Plaintiff opposed the Motion (ECF No. 34), and on April 26, 2021, State Farm replied (ECF No. 35).

---

[1] Plaintiff defines Class A as "all State Farm fire insurance policyholders insured for property located in New Jersey, whose policy includes endorsement HW-2130." (*Id.* ¶ 99.)

[2] Plaintiff divides Class A into Subclass A-1, "defined as all members of Class A who settled their respective insurance claims against State Farm without making a demand for appraisal" and Subclass A-2, "defined as all members of Class A who demanded appraisal, and as to whom State Farm failed, declined, or refused to go to appraisal on the basis of the language of the State Farm [P]olicy appraisal provision." (*Id.* ¶¶ 114, 120.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

## III.   DECISION

State Farm argues Plaintiff's individual claims under Counts One, Two, Three, and Four each fail to state a claim, which renders Plaintiff's class action claims subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). (*See generally* ECF No. 33-1.) Plaintiff argues each of his individual claims properly state a claim. (*See generally* ECF No. 34.) The Court will address the arguments underlying each of Plaintiff's individual claims in turn.

### A.  Count One: Declaratory Judgment or Reformation of the Policy

Plaintiff alleges he is entitled to reformation of the Policy's appraisal provision because "the belief of the parties that all of the provisions were in compliance with New Jersey law constituted a mutual mistake of fact." (ECF No. 31 ¶¶ 71–72.) Plaintiff asserts State Farm relied on the approval of the Commissioner of the New Jersey Department of Banking and Insurance ("DOBI") that the provisions of Plaintiff's policy complied with New Jersey, but the Policy's provisions did not comply with N.J. Stat. Ann. § 17:36-5.20 because the Policy did not provide Plaintiff "with substantially equivalent or more favorable terms than those contained in [N.J. Stat. Ann. § 17:36-5.20." (*Id.* ¶¶ 64–66.) Accordingly, Plaintiff asks the Court to declare the appraisal provision contained in HW-2130 of the Policy "does not provide substantially equivalent or more favorable terms than those contained in [N.J. Stat. Ann. § 17:36-5.20]" and reform the Policy's language by replacing its appraisal provision with the standard appraisal language found in N.J. Stat. Ann. § 17:36-5.20. (*Id.* ¶ 72.)

State Farm contends Plaintiff fails to state a claim under Count One because (1) he cannot challenge the DOBI Commissioner's approval of Form HW-2130 and (2) he has not alleged a mutual mistake of fact. (ECF No. 33-1 at 7–10.) Plaintiff argues N.J. Stat. Ann. § 17:36-5.20 gives the DOBI Commissioner power to approve forms for expanding rights granted under that statute, but "never for the purposes of abridging them." (ECF No. 34 at 6.)

N.J. Stat. Ann. § 17:36-5.20 provides several provisions that must be included in every fire insurance policy issued for real property located in the State of New Jersey. *See* N.J. Stat. Ann. § 17:36-5.20. However, the statute also allows for deviation from the standard provisions:

> [T]he commissioner may approve for use within the State a form of policy which does not correspond to the standard fire insurance policy as provided by this section if the coverage with respect to the peril of fire provided in such approved form is, when viewed in its

7

> entirely, substantially equivalent to or more favorable to the insured than that contained in the standard fire insurance policy established by this section.

*Id.*

Plaintiff contends "State Farm has failed to demonstrate that Count I does not allege legally sufficient facts to state a cause of action for a declaratory judgment that the Commissioner exceeded his authority, and for striking the appraisal provision of Form HW-2130." (ECF No. 34 at 12.)

"The actions of an administrative agency are presumed to be valid and reasonable if they are within the authority delegated to the agency." *N.J. Coal. of Health Care Pros., Inc. v. N.J. Dep't of Banking & Ins., Div. of Ins.*, 732 A.2d 1063, 1076 (N.J. Super. Ct. App. Div. 1999) (citing *Bergen Pines Cty. Hosp. v. N.J. Dep't of Hum. Servs.*, 476 A.2d 784, 794 (N.J. 1984)). The burden of overcoming this presumption lies with the party challenging the agency action, which, here, is Plaintiff. *Med. Soc. of N.J. v. N.J. Dep't of L. & Pub. Safety, Div. of Consumer Affs.*, 575 A.2d 1348, 1352 (N.J. 1990). "Particularly, in the field of insurance, the expertise and judgment of the Commissioner may be given great weight." *N.J. Coal.*, 723 A. 2d at 1076 (citing *Matter of Aetna Cas. & Sur. Co.*, 591 A.2d 631, 636 (N.J. Super. Ct. App. Div. 1991)). This deference "is not without limit," as a regulation "must still be within the fair contemplation of the delegation of the enabling statute." *N.J. State League of Municipalities v. Dep't of Cmty. Affs.*, 729 A.2d 21, 27 (N.J. 1999) (internal quotation marks omitted). But "[c]ourts . . . can act only in those rare circumstances when it is clear that the agency action is inconsistent with its legislative mandate." *Williams v. Dep't of Hum. Servs.*, 561 A.2d 244, 248 (N.J. 1989).

State Farm filed its then "Proposed Homeowners Policy," HW-2130, with the DOBI, received objections from the DOBI, responded to those objections, and then received a disposition

from the DOBI approving HW-2130. Both parties agree the DOBI approved HW-2130. (ECF No. 33-1 at 8 ("The DOBI evaluated the language of HW-2130, and by the Commissioner's approval, it determined that the semantic modifications, when viewed in their entirety, did not diminish the fire coverage provided to the insured and thus satisfied [N.J. Stat. Ann. § 17:36-5.20]."); ECF No. 34 at 6 ("It is undisputed that Form HW-2130 was approved by the Commissioner.").)

Here, Plaintiff takes issue with the language of Form HW-2130, arguing it substantially deviates from the language of N.J. Stat. Ann. § 17:36-5.20. Plaintiff included the appraisal portion of HW-2130 in his Amended Complaint. (ECF No. 31 ¶ 14.) In relevant part, HW-2130 provides that, if the parties to the Policy "fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal" and "the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed." (*Id.*) Plaintiff is the party demanding appraisal of his loss under the Policy. (*Id.* ¶ 9.) The appraisal portion of N.J. Stat. Ann. § 17:36-5.20 states if an insured and an insurance company "fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand." N.J. Stat. Ann. § 17:36-5.20. Following a failure to select a disinterested umpire upon request of either party, a judge shall select one, and the appraisers shall "appraise the loss, stating separately actual cash value and loss to each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss." *Id.* Plaintiff alleges HW-2130's appraisal provision "includes modifications and conditions for exercising the right of appraisal that do not appear to in or comply with [N.J. Stat. Ann. § 17:36-5.20]," which has "the effect of making it more difficult

for an insured to invoke the remedy of appraisal, thereby depriving him of the rights contemplated by the statute," because HW-2130 imposes a precondition—providing an itemized documentation of the amount of loss which identifies each item being disputed—on the insured's right to appraisal that is not found in N.J. Stat. Ann. § 17:36-5.20. (ECF No. 31 ¶¶ 15–16, 70.)

Plaintiff argues that, because HW-2130's requirement that a written itemization be submitted prior to seeking appraisal is not found in N.J. Stat. Ann. § 17:36-5.20, Plaintiff is deprived of "substantially equivalent or more favorable terms" as required by the statute. As discussed, the DOBI may approve a form that does not conform to the standard provisions listed in N.J. Stat. Ann. § 17:36-5.20 if the form is, "when viewed in its entirety, substantially equivalent to or more favorable to the insured." N.J. Stat. Ann. § 17:36-5.20. Plaintiff offers no argument as to how the appraisal provision in HW-2130 deviates from N.J. Stat. Ann. § 17:36-5.20 such that the DOBI, viewing the Policy in its entirety, could find HW-2130 is not substantially or equivalent to or more favorable to the insured. Even when viewed in isolation, HW-2130 is consistent with N.J. Stat. Ann. § 17:36-5.20. N.J. Stat. Ann. § 17:36-5.20 requires policies to provide "written demand" to allow appraisers and umpires to "appraise the loss, stating separately actual cash value and loss to each item," which is satisfied by HW-2130's appraisal provision that "the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed." (ECF No. 31 ¶ 14.) The Court is not convinced that requiring itemization as a prerequisite to appraisal transforms HW-2130 into a policy that is not "substantially equivalent to or more favorable to the insured" than the standard form coverage in N.J. Stat. Ann. § 17:36-5.20, especially when the DOBI reviewed HW-2130, raised objections to the Policy, considered corrections to the Policy, and ultimately approved its provisions. The DOBI's determination that HW-2130's appraisal provision requiring

itemization prior to appraisal is "presumed to be valid and reasonable," and Plaintiff has not carried his burden of overcoming this presumption. *See N.J. Coal.*, 732 A.2d at 1076.

Additionally, Plaintiff alleges "the belief of the parties that all of the provisions of the Policy were in compliance with New Jersey law constituted a mutual mistake of fact," which entitles Plaintiff to "reformation of the [P]olicy's appraisal provision" to comply with N.J. Stat. Ann. § 17:36-5.20. (ECF No. 31 ¶¶ 71–72.) Plaintiff argues "if the Court ultimately finds that the Commissioner exceeded his authority, then the parties will in fact have been mistaken" about the Policy's legality, "and reformation would be the most appropriate remedy." (ECF No. 34 at 13.)

Under New Jersey law, "a court may reform a contract if it 'was created by the negotiations of the parties, but by mutual mistake is wanting in formal expression or execution, so as to evince the actual intent of the parties.'" *Ill. Nat. Ins. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (quoting *Gross v. Yeskel*, 134 A. 737, 737 (N.J. Eq. 1926)). "New Jersey courts will reform a contract for mutual mistake where the parties have 'met and reached a prior existing agreement' that the document does not express." *Newport Assocs. Phase I Devs. Ltd. P'ship v. Travelers Cas. & Sur. Co.*, Civ. A. No. 5543-11T1, 2013 WL 10090299, at *13 (N.J. Super. Ct. App. Div. Jan. 16, 2015) (quoting *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 660 (N.J. 1989)). "To reform a contract, there must be clear and convincing proof that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be." *Affiliated FM Ins. v. Rothschild Realty I, L.P.*, Civ. A. No. 1448-19, 2021 WL 3439563, at *4 (N.J. Super. Ct. App. Div. Aug. 6, 2021) (internal quotation marks and citations omitted). "The general rule with respect to the reformation of contracts applies equally to insurance policies: relief will be granted only where . . . a mistake on the part of one party is accompanied by fraud or other

unconscionable conduct of the other party." *Id.* (citing *N.J. Transit Corp. v. Certain Underwriters at Lloyd's London*, 221 A.3d 1180, 1194 (N.J. Super. Ct. App. Div. 2019)).

Importantly, Plaintiff does not allege the existence of a prior agreement between the parties that would justify reformation on basis of mutual mistake, as the Policy was the only agreement between the parties. (*See* ECF No. 31 ¶ 20 ("At all times relevant to this Complaint, the Property was insured under a property and casualty insurance policy issued by State Farm."); *see also id.* ¶ 74 ("The insurance policy issued to Plaintiff by State Farm constituted a contract.").) Because there is no prior agreement that the Court could enforce in reforming the Policy on the basis of mutual mistake, Plaintiff has not sufficiently demonstrated that reformation of the Policy would serve as an adequate remedy. *Newport*, 2013 WL 10090299, at *13; *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 443 A.2d 1052, 1057 (1982) ("[A] a court will not decree reformation unless it has convincing evidence that the parties expressed agreement and an intention to be bound in accordance with the terms that the court is asked to establish and enforce.") (citations omitted).

Plaintiff further argues the parties were both mistaken about the legality of the Policy because the "[t]he appraisal provision of the form violates the statute, and therefore must be stricken." (ECF No. 34 at 13.) Both parties agree the Commissioner approved the Policy (ECF No. 33-1 at 8; ECF No. 34 at 6), but Plaintiff asserts that if the Commissioner's approval of HW-2130 is invalidated, "the parties will in fact have been mistaken, and reformation would be the most appropriate remedy" (ECF No. 34 at 13). As indicated above, the Court will not invalidate the Commissioner's approval of HW-2130, and if it did, this invalidation would not establish a mutual mistake of fact, because "[m]utual mistake is evaluated by determining the understanding of the parties at the time the contract was formed," and any determination by this Court that the

Commissioner's approval should be invalidated would come far after the time of contracting. *Ill. Nat. Ins.*, 653 F.3d at 231 (citing *Bonnco*, 560 A.2d at 659–60); *610 Convenience Store & Deli*, Civ. A. No. 19-17309, 2020 WL 6797073, at *4 (D.N.J. Nov. 19, 2020) ("Erroneous predictions of future events do not qualify as a mistake." (quoting *Consol. Rail Corp. v. Portlight, Inc.*, 188 F.3d 93, 97 (3d Cir. 1999))); *PNY Techs., Inc. v. Netac Tech. Co.*, Civ. A. No. 18-7932, 2018 WL 3647221, at *3 (D.N.J. Aug. 1, 2018) ("Expectations or predictions about the future course of history are not facts in [the mutual mistake of fact] context." (citing *Restatement (Second) of Contracts* § 151 cmt. a)). Therefore, Plaintiff has not established a mutual mistake of fact between the parties that would justify reformation of the Policy. Accordingly, Plaintiff's claim for Declaratory Judgment or Reformation of the Policy under Count One is **DISMISSED**.

> ### B.     Count Two: Breach of Contract

Plaintiff alleges State Farm "breached the terms of the contract of insurance, both as originally written and, to the extent that the relief sought in Count One above is granted, as reformed by the Court." (ECF No. 31 ¶ 76.) Specifically, Plaintiff contends State Farm breached the insurance contract when it "demanded Plaintiff provide an itemization of disputed issues" and "mischaracterized disagreements over the cost of repairs as disputes over 'scope.'" (*Id.* ¶¶ 77, 80.) State Farm argues it could not have breached the Policy by requesting an itemization required by the Policy because Plaintiff's claim for reformation fails as a matter of law, and even if it didn't, Plaintiff's breach of contract claim would still fail because he was not harmed by the itemization requirement. (ECF No. 33-1 at 11.) Further, State Farm argues its choice to decline to appraise the issues under the Policy that are not appraisable in the first place does not constitute breach. (*Id.* at 11–15.)

Under New Jersey law, a "plaintiff bringing a cause of action for breach of contract must

establish: (1) the existence of a valid contract with plaintiff and defendant; (2) a breach of the contract by defendant; (3) performance by the plaintiff of his or her obligations under the contract; and (4) resulting damages." *Khorchid v. 7-Eleven, Inc.*, Civ. A. No. 18-8525, 2018 WL 5149643, at *8 (D.N.J. Oct. 22, 2018) (citing *Oswell v. Morgan Stanley Dean Witter & Co.*, Civ. A. No. 06-5814, 2007 WL 1756027, at *5 (D.N.J. June 18, 2007)). Here, the only element at issue is breach, as Plaintiff alleges State Farm breached the Policy, the underlying contract, by requiring Plaintiff to provide an itemization of items in dispute and mischaracterizing disagreements over the cost of repairs as disputes over scope. (*See* ECF No. 31 ¶¶ 77–80.)

Plaintiff alleges that, "[i]f and to the extent that the relief sought in Count One above is granted, the requirement of an itemization of the issues in dispute from Plaintiff . . . violated the express terms of the [P]olicy as reformed by the Court." (ECF No. 31 ¶ 78.) Here, the Court has decided that reformation is improper because there is no prior agreement that could serve as the basis of mutual mistake as required by New Jersey law. State Farm merely enforced the Policy by requiring Plaintiff to provide an itemization of disputed issues. (*See* ECF No. 31 ¶ 14 ("[T]he party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.").) Further, while Plaintiff alleges he was damaged by the denial of his right to appraisal under the Policy, State Farm did not deny Plaintiff's demand for appraisal because Plaintiff did not provide an itemization of disputed issues. On July 29, 2020, Plaintiff's adjuster provided an itemization. (ECF No. 31, Ex. G.) On August 7, 2020, State Farm denied Plaintiff's demand for appraisal because the parties were "not in agreement on the extent of covered damage and the scope of work required to repair that damage" and "[t]he appraisal process does not apply to disputes as to the extent of the damage, the scope of work required, the cause of damage, or other coverage questions." (ECF

No. 31, Ex. H.) That is, even if the Court reformed the Policy by deleting the itemization requirement, Plaintiff would still fail to state a claim for breach of contract because he was not harmed by that requirement, as State Farm's denial of Plaintiff's demand for appraisal was not based on Plaintiff's failure to provide an itemization. *See, e.g.*, *Sheet Metal Workers Int'l Ass'n Loc. Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (clarifying that to state a claim for breach of contract under New Jersey law, a plaintiff must establish "a causal relationship between the breach and the plaintiff's alleged damages." (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)). Therefore, Plaintiff has not adequately alleged that State Farm breached the Policy by requiring Plaintiff to provide an itemization of issues in dispute.

Next, Plaintiff argues State Farm breached the Policy by mischaracterizing disagreements over the cost of repairs as disputes over the "scope" of the Policy. (ECF No. 34 at 15.) The Policy clarifies "[a]ppraisal is only available to determine the amount of the loss of each item in dispute" and "[t]he appraisers and the umpire have no authority to decide: (1) any other questions of fact; (2) questions of law; (3) questions of coverage; (4) other contractual issues; or (5) to conduct appraisal on a class-wide basis." (ECF No. 31 ¶ 14.) Plaintiff alleges "State Farm mischaracterized disagreements over the cost of repairs as disputes over 'scope,' thereby creating an excuse not to submit to appraisal notwithstanding the provisions of the contract." (*Id.* ¶ 80.) In its letter to Plaintiff denying his demand for appraisal, State Farm provided four reasons why appraisal was not appropriate. First, Plaintiff's contractor's estimates included the replacement of the Property's entire roof, while State Farm provided coverage for only the damaged portions of the roof. (*Id.* ¶ 42.) Second, Plaintiff's contractor's estimates included removal and replacement of all of the exterior siding on the Property, including areas not damaged in the loss, while State Farm only

provided coverage for replacing the damaged portions of the siding. (*Id.*) Third, Plaintiff's estimate included repairs of floors in rooms that were not damaged. (*Id.*) And fourth, Plaintiff's estimates included repairs of kitchen cabinets that were not damaged in the loss. (*Id.*) That is, Plaintiff wanted State Farm to repair parts of the Property that were not damaged in the occurrence, while State Farm declined appraisal because it was only obligated, under the Policy, to repair portions of the Property that were actually damaged in the loss.

Based on this denial, State Farm argues it could not have breached the Policy by denying appraisal over items that were not appraisable under the Policy to begin with. (ECF No. 33-1 at 11–12.) Plaintiff argues State Farm mischaracterizes a dispute over cost as a dispute over the scope of the Policy. (ECF No. 34 at 15.) The Court disagrees.

The Policy expressly provided appraisers do not have authority to decide "questions of law," "questions of coverage," and "other contractual issues." (ECF No. 31 ¶ 14.) The dispute here involves questions of coverage—whether State Farm should cover damage beyond the extent of the loss—and questions of causation—whether the damage to the areas from which Plaintiff seeks compensation were caused by the occurrence. "New Jersey law simply makes it clear that appraisers (and umpires) cannot make legal determinations and may only determine a disputed amount of loss, not a party's liability." *DC Plastic Prod. Corp. v. Westchester Surplus Lines Ins. Co.*, Civ. A. No. 17-13092, 2021 WL 2018918, at *2 (D.N.J. May 19, 2021) (citations omitted). These "legal determinations" include decisions as to whether a contract provides for coverage of a given item, like Plaintiff's allegations that under the Policy, State Farm should cover parts of the Property that were not damaged in the loss. *See Rastelli Bros. v. Netherlands Ins.*, 68 F. Supp. 2d 448, 449 (D.N.J. 1999) (noting that under New Jersey law, "an appraiser, pursuant to a fire policy, can make no legal determinations, such as determinations of whether a contract between parties

16

provides for coverage of a lost item . . . [because] an appraiser's role is to determine a disputed amount of loss and not to establish liability"). By rejecting Plaintiff's request for appraisal, State Farm did not merely dispute the issue of cost of certain repairs. Rather, State Farm rejected the demand for appraisal because the undamaged areas of the Property were not covered by the Policy. While this may result in some disagreement over the cost of certain repairs—Plaintiff's estimates included inflated values of repair because his contractor's estimates included repairs to the Property not damaged by the occurrence—this dispute is, at bottom, a dispute over coverage. That is, State Farm is not, as Plaintiff suggests, "convert[ing] simple issues of cost *into* issues of liability." (ECF No. 34 at 19.)

Further, as alleged by Plaintiff, "State Farm . . . refused to submit to appraisal, asserting that it 'does not apply to disputes as to the extent of damage, the scope of work required, the cause of damage, or other coverage questions.'" (ECF No. 31 ¶ 41 (quoting ECF No. 31, Ex. H).) Plaintiff concedes issues of causation are not appraisable. (*See* ECF No. 34 at 21 ("New Jersey does not permit appraisers to decide issues of causation.").) That is, State Farm's denial of Plaintiff's demand for appraisal did not result from a disagreement over the cost of a covered item, but rather, whether the occurrence caused damage to other areas of the Property for which Plaintiff sought repairs. (*See* ECF No. 31, Ex. H. at 1 ("Appraisal under the policy is a mechanism for resolving disagreements over the amount of loss. The appraisal process does not apply to disputes as to the extent of the damage, the scope of work required, the cause of damage, or other coverage questions.").) State Farm's denial of Plaintiff's demand for appraisal is proper when the dispute turns on the issue of causation. *Campbell v. N.J. Ins. Underwriting Ass'n*, Civ. A. No. OCN-L-423-14, 2014 WL 10679851, at *3 (N.J. Super. Ct. L. Div. Sep. 11, 2014) ("The court is satisfied that the appraisal process should not be invoked where, as here, the primary issue is *causation*, not

17

the *amount of the loss*."). In *Campbell*, there was "a significant dispute . . . as to what portion of the damage to plaintiffs' property was caused by a peril (*i.e.*, wind) covered under the policy issued by defendant." *Id.* at *2. The issue before the court was "whether the appraisal process set forth in defendant's policy [could] be invoked where there are competing theories of causation." *Id.* While the parties' arguments are slightly different than those present in *Campbell*, as Plaintiff does not offer a competing theory of causation and merely argues State Farm mischaracterized issues of cost to avoid the appraisal process, *Campbell* made clear that the appraisal process can be invoked only when "there is no dispute as to the extent of damage or the scope of work required," because "the appraisal process is not intended to resolve disputes as to the extent of damage, the scope of work required, or the cause of the damage." *Id.* Here, State Farm denied Plaintiff's demand for appraisal in part because Plaintiff's contractor's estimates raised issues regarding which damaged parts of the Property were actually caused by the loss, as Plaintiff sought complete replacement, as opposed to only those portions damaged, of the Property's roof and siding and repair of floors and kitchen cabinets that were not damaged in the loss. These estimates hinge on whether the occurrence also caused damage to the areas State Farm determined were not damaged by the storm, which is an issue of causation, not merely a dispute over the amount of loss. Therefore, because the parties' dispute centered on the Policy's coverage and the cause of the damage, Plaintiff has not properly alleged that State Farm breached the appraisal provision of the Policy by denying Plaintiff's demand for appraisal. Accordingly, Plaintiff's breach of contract claim under Count Two is **DISMISSED**.

### C.  **Count Three: Breach of the Covenant of Good Faith and Fair Dealing**

In Count Three, Plaintiff alleges if "State Farm is found not to have violated the express terms of the insurance contract, it has nevertheless acted tortiously and in bad faith, and has

breached the covenants of good faith and fair dealing." (ECF No. 31 ¶ 85.) State Farm argues this claim should be dismissed "because it is duplicative and fails to satisfy the pleading requirements for a bad faith claim." (ECF No. 33-1 at 15.) Plaintiff argues his claim for breach of the implied covenant of good faith and fair dealing "does not . . . put it in danger of a duplication of damages." (ECF No. 34 at 24.)

Under New Jersey law, "every contract in New Jersey contains an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 778 A.2d 580, 584 (N.J. Super. Ct. App. Div. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002); *Sons of Thunder, Inc. v. Borden*, 690 A.2d 575, 587 (N.J. 1997) (same). Indeed, [t]he implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (citing *Sons of Thunder*, 690 A.2d at 575). While there is no universally-accepted test for establishing a breach of the duty of good faith and fair dealing, "two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins.*, Civ. A. No. 3:09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assos.*, 864 A.2d 387 (N.J. 2005)). In addition, "in the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Collick v. William Paterson Univ.*, Civ. A. No. 16-471, 2016 WL 6824374, at *9 (D.N.J. Nov. 17, 2016); *Wade*, 778 A.2d at 586. Finally, "under New Jersey law, '[a] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action.'" *Irene v. Michael Whaley Interiors, Inc.*, Civ. A. No. 1914998, 2020 WL 759573, at *2 (D.N.J. Feb. 13, 2020) (quoting *TBI Unlimited, LLC v.*

*Clear Cut Lawn Decisions, LLC*, Civ. A. No. 12-3355, 2013 WL 6048720, at *3 (D.N.J. Nov. 14,

2013)); *Oravsky v. Encompass Ins.*, 804 F. Supp. 2d 228, 239 (D.N.J. 2011) (finding plaintiff's

claim for breach of the implied covenant of good faith and fair dealing claim failed at the motion

to dismiss stage because that claim was "duplicative of [plaintiff's] breach of contract claim");

*Cty. of Essex v. Aetna Inc.*, Civ. A. No. 17-13663, 2018 WL 6584920, at *5 (D.N.J. Dec. 13,

2018), *on reconsideration*, Civ. A. 17-13663, 2019 WL 1951073 (D.N.J. May 1, 2019) ("[W]hen

'a claim for breach of the implied covenant of good faith and fair dealing is premised upon the

same conduct as a breach of contract claim, the claim must be dismissed as duplicative.'") (quoting

*MZL Cap. Holdings, Inc. v. TD Bank, N.A.*, Civ. A. No. 14-5772, 2016 WL 4163827, at *10 (D.N.J.

Aug. 5, 2016))); *Keaton v. Argo Turboserve Corp.*, Civ. A. No. 217-03978, 2021 WL 3879091, at

*10 (D.N.J. Aug. 31, 2021) ("If the factual allegations supporting an implied covenant of good

faith are the same as those supporting a breach of contract claim, the former claim will be dismissed

as duplicative under Rule 12(b)(6).") (citations omitted).

Here, Plaintiff's allegations underlying his breach of the implied covenant of good faith

claim are based upon the same conduct as his allegations underlying his breach of contract claim.

(*Compare* ECF No. 31 ¶ 77 ("By way of example, State Farm demanded that Plaintiff provide an

itemization of disputed issues in a manner that was neither reasonable nor possible under the

circumstances and rejected all reasonable efforts by Plaintiff to do so . . . ."), *with id.* ¶ 86 ("By

way of example, State Farm demanded that Plaintiff provide an itemization of disputed issues in a

manner that was neither reasonable nor possible and rejected all reasonable efforts by Plaintiff to

do so . . . ."); *compare id.* ¶ 78 ("[T]he requirement of an itemization of the issues in dispute from

Plaintiff as a precondition to the right of appraisal violated the express terms of the [P]olicy . . .

."), *with id.* ¶ ("If and to the extent that the demand for an itemization did not violate the express

[P]olicy terms, State Farm nevertheless breached the covenants of good faith and fair dealing by demanding it in a form that was neither reasonable nor possible under the circumstances, and by rejecting Plaintiff's good faith efforts to comply . . . ."); *and compare id.* ¶ 80 ("State Farm mischaracterized disagreements over the cost of repairs as disputes over 'scope,' thereby creating an excuse not to submit to appraisal notwithstanding the provisions of the contract . . . ."), *with id.* ¶ 88 ("State Farm nevertheless breached the covenants of good faith and fair dealing by [mischaracterizing] disputes over cost as disputes over scope . . . .").) For clarity, Plaintiff's main allegations under his breach of contract claim are that State Farm breached the Policy by requiring Plaintiff to provide an itemization of disputed issues and by mischaracterizing disagreements over the cost of repairs as disputes over the Policy's scope (*id.* ¶¶ 77–80; *see also supra* section III.B), which are repeated in his allegations underlying his claim for breach of the implied covenant of good faith and fair dealing (*id.* ¶¶ 86–88). Because Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is duplicative of his breach of contract claim, Plaintiff fails to state a claim under Count Three. *See Keaton*, 2021 WL 3879091, at *10 (dismissing plaintiff's claim for breach of the implied covenant of good faith and fair dealing "as being duplicative of" plaintiff's breach of contract claim because "the factual predicate for the breach of the implied covenant of good faith claim is identical to that of the breach of contract claim"). Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing under Count Three is **DISMISSED**.

### D.     Count Four: Violation of the New Jersey Consumer Fraud Act

Plaintiff alleges State Farm's refusal to submit Plaintiff's claim to appraisal "constituted an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation" which violates the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann.

§ 56:8-1, *et seq*. Plaintiff points toward State Farm's demand that Plaintiff provide an itemization of disputed issues and mischaracterization of disagreements over the cost of repairs as examples of violations. (ECF No. 31 ¶¶ 94–95.)

State Farm argues the CFA does not apply to claims arising from the denial of insurance benefits, and even if it did, Plaintiff fails to state a claim under the CFA. (ECF No. 33-1 at 19–22.) Plaintiff contends that while the Supreme Court of New Jersey has not decided whether the CFA applied to fraudulent conduct in the servicing of policies, the Third Circuit has predicted the New Jersey Supreme Court would find the CFA applicable when an insurance company is alleged to have fraudulently performed an insurance contract with an insured. (ECF No. 34 at 26–28.)

In *Weiss v. First Unum Life Insurance Co.*, 482 F.3d 254 (3d Cir. 2007), one of the cases upon which Plaintiff relies, the Third Circuit addressed allegations that First Unum Life Insurance Company ("First Unum") "discontinued payment of [the plaintiff's] disability benefits as part of First Unum's racketeering scheme involving an intentional and illegal policy of rejecting expensive payouts to disabled insureds." *Id.* at 256. The Third Circuit addressed whether these allegations violated the CFA, a question that had not been previously answered by the New Jersey Supreme Court. *See id.* at 266. The court ultimately found the CFA applied to the plaintiff's claims, because the New Jersey Supreme Court's "statements regarding the application of the CFA to deter and punish deceptive insurance practices" made the Third Circuit "question why it would not conclude that the performance in the providing of benefits, not just sales, is covered, so that treble damages would be available for this claim under the CFA." *Id.*

However, several courts following *Weiss* have clarified the CFA does not apply to claims based on an insurance company's refusal to provide benefits, like Plaintiff's claim here. *See, e.g.*, *Granelli v. Chicago Title Ins.*, 569 F. App'x 125, 133 (3d Cir. 2014) ("New Jersey courts . . . have

consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act."
(quoting *Van Holt v. Liberty Mut. Fire Ins.*, 163 F.3d 161, 168 (3d Cir.1998))); *Zero Barnegat
Bay, LLC v. Lexington Ins. Co.*, Civ. A. No. 14-1716, 2019 WL 1242436, at \*4 (D.N.J. Mar. 18,
2019), *reconsideration denied*, Civ. A. No. 14-1716, 2019 WL 3818349 (D.N.J. Aug. 13, 2019)
("The CFA does not provide a remedy for failure to pay benefits" (citing *Nationwide Mut. Ins. v.
Caris*, 170 F. Supp. 3d 740, 746–47 (D.N.J. 2016))); *Breitman v. Nat'l Sur. Corp.*, Civ. A. No. 14-
7843, 2015 WL 5723141, at \*5 (D.N.J. Sept. 29, 2015) (same). Further, courts reviewing *Weiss* in
the context of CFA claims have consistently held that *Weiss* does not stand for the proposition that
a denial of benefits can establish a claim under the CFA. *See Smith v. State Farm Fire & Cas. Co.*,
Civ. A. No. 1910319, 2020 WL 6938432, at \*8 (D.N.J. Nov. 25, 2020) (denying plaintiff's CFA
claim that she was improperly denied coverage and finding plaintiff's reliance on *Weiss* misplaced
because "*Weiss* dealt with 'the allegedly fraudulent practice of discontinuing previously authorized
benefit payments,' as opposed to a case in which the plaintiff filed an insurance claim and 'was
denied . . . benefits.'") (quoting *Alpizar-Fallas v. Favero*, 908 F.3d 910, 916–17 (3d Cir. 2018)));
*see also Myska v. N.J. Mfrs. Ins.*, 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015) ("[T]he facts
in *Weiss* are significantly distinguishable from those at hand. The court in *Weiss* found the CFA
applied to allegations of fraudulent discontinuation of previously authorized benefits. The [*Weiss*
court] did not discuss the precedent we have cited, which excludes determination of initial
coverage disputes."). Since Plaintiff is seeking damages under the CFA arising from State Farm's
denial of Plaintiff's appraisal benefit (ECF No. 31 ¶¶ 93, 96), the CFA is not applicable.

Even if the CFA applied to State Farm's denial of Plaintiff's demand for appraisal, Plaintiff
fails to state a claim under the CFA. To state a claim under the CFA, "a plaintiff must demonstrate
three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff;

23

and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). Moreover, a CFA claim must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *See Laing v. Am. Strategic Ins.*, Civ. A. No. 14-1103, 2014 WL 4953250, at *4 (D.N.J. Oct. 1, 2014) ("Plaintiffs' CFA claim must satisfy Rule 9(b)'s pleading requirements."). "Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

Here, Plaintiff provides vague allegations to support his CFA claim that do not satisfy Rule 9(b)'s heightened pleading requirements. He merely asserts State Farm's denial of Plaintiff's demand for appraisal, State Farm's demand that Plaintiff provide an itemization of disputed issues, "and [State Farm's] rejection of reasonable efforts of Plaintiff to comply," along with "State Farm's mischaracterization of disagreements over the cost of repairs as disputes over 'scope' for the purpose of defeating Plaintiff's statutory and contractual right to appraisal," all "constituted an unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation." (ECF No. 31 ¶¶ 93–95.) These allegations inject language from the CFA and provide no further specificity. *See* N.J. Stat. Ann. § 56:8-2 (defining "unlawful practice" as "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or

24

advertisement of any merchandise or real estate."). These conclusory allegations do not satisfy Rule 8's lower pleading standards, let alone Rule 9(b)'s heightened pleading requirements. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Therefore, Plaintiff's claim for violation of the CFA under Count Four is **DISMISSED**.

### E.    Plaintiff's Class Action Allegations

In addition to Plaintiff's individual claims, he asserts class action claims on behalf of "all State Farm fire insurance policyholders insured for property located in New Jersey, whose policy includes endorsement HW-2130." (ECF No. 31 ¶ 99; *see also id. generally*.) State Farm argues Plaintiff's class claims should be dismissed because his individual claims fail. (ECF No. 33-1 at 22–23.) Plaintiff does not offer any argument in opposition on this issue, but generally asserts State Farm's Motion "should be denied in its entirety, and as to all counts." (ECF No. 34 at 29.) At this stage in the litigation, the class Plaintiff seeks to establish has not been certified. When, as here, a court dismisses a named plaintiff's individual allegations, the plaintiff's class allegations will also be dismissed. *See Bass v. Butler*, 116 F. App'x 376, 385 (3d Cir. 2004) ("Because no class has been certified here, if [plaintiff's] claim fails, the entire action must be dismissed." (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129–30 (1975))); *Napoli v. HSBC Mortg. Servs. Inc.*, Civ. A. No. 12-222, 2012 WL 3715936, at *5 (D.N.J. Aug. 27, 2012) ("Because this Court dismisses all of Plaintiffs' individual claims, and Plaintiffs' purported class has not yet been certified, Plaintiffs' class allegations must also be dismissed." (citing *Bass*, 116 F. App'x at 385)); *Donachy v. Intrawest U.S. Holdings, Inc.*, Civ. A. No. 10-4038, 2012 WL 869007, at *9 (D.N.J. Mar. 14, 2012) (same) (citations omitted); *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) ("'[W]hen claims of the named plaintiffs become moot before class certification, dismissal of the

action is required.'" (quoting *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992))). Accordingly, because the Court has dismissed each of Plaintiff's individual claims and because Plaintiff's purported class has not yet been certified, Plaintiff's class allegations are **DISMISSED**.

## IV.   CONCLUSION

For the reasons set forth above, State Farm's Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED,** and Plaintiff's Amended Complaint is **DISMISSED**. An appropriate order will follow.


Date: September 24, 2021                             */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**